139 Ariz. 481 (1984)
679 P.2d 504
STATE of Arizona, Appellee,
v.
Edward Gerard McLOUGHLIN, Appellant.
No. 5158-2.
Supreme Court of Arizona, In Banc.
February 29, 1984.
Reconsideration Denied April 3, 1984.
*483 Robert K. Corbin, Atty. Gen., William J. Schafer, III, Chief Counsel, Criminal Division, David R. Cole, Asst. Atty. Gen., Phoenix, for appellee.
Ross P. Lee, Maricopa County Public Defender, Michael G. Sullivan, Deputy Public Defender, Phoenix, for appellant.
GORDON, Vice Chief Justice:
In the fall of 1980, appellant Edward Gerard McLoughlin was convicted of first-degree murder and first-degree burglary. He was sentenced to death for the former and ten years imprisonment for the latter. Appeal to this Court resulted in reversal of the convictions and sentences due to jury misconduct.[1] In disposing of that appeal, we considered other claims of error raised by appellant likely to arise on retrial. On April 6, 1983, having waived his right to a jury trial in exchange for a promise from the state that if found guilty the death penalty would not be sought, appellant was once again found guilty of first-degree murder and first-degree burglary. He was sentenced to life imprisonment for the former and to five years imprisonment for the latter, to be served concurrently. On appeal from the second convictions, appellant presents four grounds for reversal. He claims the trial court, on remand, erred when it refused to consider his motion to dismiss, his motion to suppress, and his motion to preclude any in-court identification based on a pre-trial show-up. Finally, he urges us to declare Arizona's felony-murder statute, A.R.S. § 13-1105, unconstitutional. We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3) and A.R.S. § 13-4031. The judgment is affirmed.
Appellant acknowledges that the first three issues arise out of holdings in State v. McLoughlin, supra, ("McLoughlin I"). He claims reconsideration of those holdings is required in light of McNutt v. Superior Court, 133 Ariz. 7, 648 P.2d 122 (1982), decided in the interim between McLoughlin I and appellant's second trial and in light of the facts and evidence presented at his first trial which, he claims, this Court failed to recognize as indicated by its reliance on Nelson, supra, in deciding McLoughlin I.[2] We disagree and hold that McLoughlin I remains the law of the case.
MOTION TO DISMISS
In McLoughlin I, appellant moved to dismiss on the grounds that the destruction of the tape recordings of the police broadcasts relied on by the police officers in stopping and arresting appellant and Donald Nelson resulted in a denial of his right to due process because it precluded him from proving that the officers lacked probable cause to stop and arrest. The motion was denied. On appeal, we upheld the trial court based on our decision in Nelson, supra. Prior to appellant's second trial, the state moved to preclude oral argument and evidentiary hearings on the merits of all pre-trial motions determined in McLoughlin I including the motion to dismiss. The motion was granted, and rightfully so. We find nothing in McNutt nor any new facts that mandate a different result.
In McNutt, the defendant was arrested and held on suspicion of driving while intoxicated. His request to call his attorney and his request to have an independent blood test after a chemical breath test was taken were ignored. As noted by appellant, we dismissed the case with prejudice having found that "the state's action foreclosed a fair trial by preventing petitioner from collecting exculpatory evidence no longer available." McNutt, supra, at 10, *484 648 P.2d at 125. Though the instant case, like McNutt, involved the destruction of evidence, there are significant distinctions between the cases that justify different results. First, in McNutt and the cases cited therein, the challenged state action involved violation of a state statute, A.R.S. § 28-692(F) [now A.R.S. § 28-692(I)] whereas the challenged action here involves no statutory violation.[3] There is no statutory right to obtain police tapes of radio broadcasts that lead to one's arrest.
Second, McNutt dealt with an unjustified refusal to allow a defendant the opportunity to obtain physical evidence before it was destroyed. As stated by our Court of Appeals in State ex rel. Webb v. City Court, 25 Ariz. App. 214, 542 P.2d 407 (1975), reiterated in Smith v. Cada, 114 Ariz. 510, 562 P.2d 390 (App. 1977), and relied on by this Court in McNutt,
"the Fourteenth Amendment's `fair play' doctrine requires that when one charged with a criminal offense of which a physical condition or state of the accused is an element, and when such physical condition or state is subject to change with the passage of time to the extent that evidence thereof may be lost unless preserved within a relatively brief period of time, the accused is denied due process of law if he is held incommunicado and the authorities deny his request to be allowed to attempt to arrange * * * for scientific tests which would be reliably indicative of the physical condition or state in question at the crucial time." 25 Ariz. App. at 216, 542 P.2d at 409.
The instant case does not involve an attempt to procure rapidly dissolving evidence necessary to defend against a criminal charge nor does it involve any denial by the state of a request to procure evidence before it is no longer available. Instead it involves the propriety of the apprehension of persons suspected of the robbery and murder of a liquor store clerk and a post-destruction request for tapes, destroyed in the routine course of police procedure.
Third, in McNutt, the police acted in bad faith when they refused, without justification, to allow the defendant to call his attorney or to otherwise provide for administration of an independent blood test. We find no showing of bad faith in the instant case. The tapes were not destroyed despite a request that they be saved for use in appellant's defense nor were they denied to him while they were still in existence. The tapes were destroyed in accordance with routine police practice.
Finally, in McNutt, the defendant was prejudiced by the state's action as he was denied access to potentially exculpatory evidence. Appellant has failed to show any prejudice here. At most, the destroyed evidence would have supported his argument that the police lacked probable cause to stop and arrest him and his accomplice. The tapes could not, by any stretch of the imagination, exculpate appellant. Our holding in McNutt does not require reconsideration of the propriety of our decision in McLoughlin I upholding the trial court's denial of appellant's motion to dismiss.
MOTION TO SUPPRESS
Appellant asks this Court to reconsider the motion to suppress. The first trial court's denial of that motion was upheld by this Court in McLoughlin I and was followed by the second trial court on remand. Appellant claims that this Court's consideration of the propriety of the initial denial of the motion to suppress was inadequate because the Court did not write "one sentence or one word to even acknowledge the issue on the sufficiency of the affidavit" used to secure the search warrant that authorized the search which led to acquisition of the evidence at issue. This argument is unpersuasive. Appellant has, from the start, sought to suppress the evidence *485 found in his accomplice's truck on the ground that it was a product of a stop and arrest that was unlawful because it was made without probable cause. We have already considered and upheld as valid the arrest and subsequent search of the getaway truck. In arguing "insufficiency of the affidavit," appellant is reasserting an old claim in the guise of a new "unacknowledged" issue. We see no reason to question our prior determination that the evidence at issue was properly admitted pursuant to a lawful arrest and valid search and seizure.
Appellant also contends that this Court erred when it applied its holding in Nelson, supra, affirming the trial court's denial of the motion to suppress to appellant in McLoughlin I because "new facts" were developed in McLoughlin's trial which distinguished appellant's motion to suppress from Nelson's. Appellant fails, however, to point to any "new facts." We find none. Appellant's bald assertions do not warrant reconsideration of the motion to suppress.
MOTION TO PRECLUDE SHOW-UP IDENTIFICATIONS
Appellant also asks the Court to reevaluate its decision upholding the trial court's denial of appellant's motion to preclude in-court identifications based on an after-the-arrest show-up. On remand, the trial court sustained the prior rulings but allowed the defense to submit for the court's consideration the transcript of an interview of Dr. Elizabeth Loftus, an expert on the reliability of identifications.[4] We find no reason to reconsider our prior ruling or to challenge the second trial court's judgment with respect thereto.
FELONY-MURDER RULE
Finally, appellant challenges the validity of Arizona's felony-murder rule, A.R.S. § 13-1105[5] on two grounds. He claims first that the rule is unjust because it punishes based on the result of criminal conduct rather than on the degree of mental culpability attached to it and, second, that it is unconstitutional because it embodies a conclusive presumption of mens rea. We disagree.
The fact that A.R.S. § 13-1105(A)(2) focuses on the result of criminal conduct rather than on an offender's state of mind at the time of the conduct does not render it unjust or compel its abolition. Furthermore, contrary to what appellant claims, the felony-murder rule, does not allow the state to obtain murder convictions without any showing of mens rea. Before an accused can be found guilty of first-degree murder pursuant to the felony-murder rule the state must prove he or she committed one of the felonies enumerated in § 13-1105(A)(2). See State v. Vickers, 138 Ariz. 450, 675 P.2d 710 [1983]. Though the felony-murder doctrine does not require a specific intent to kill to support a first-degree murder conviction, State v. Woratzeck, 134 Ariz. 452, 657 P.2d 865 (1982); State v. Arias, 131 Ariz. 441, 641 P.2d 1285 (1982); State v. Jordan, 126 Ariz. 283, 614 P.2d 825, cert. denied, 449 U.S. 986, 101 S.Ct. 408, 66 L.Ed.2d 251 (1980), it does require proof of the mental state required for commission of the relevant felony. A.R.S. § 13-1105(B). As we held in State v. Arias, supra, the mens rea necessary to *486 satisfy the premeditation element of first-degree murder is supplied by the specific intent required for the felony. We reject appellant's claim that this is unconstitutional. It is not unconstitutional for the Arizona Legislature to mandate that an individual who causes the death of another while seeking to accomplish one of several enumerated felonies, each of which requires a showing of intent and/or knowledge for conviction, be subject to the same criminal charges and punishment as a person who causes the death of another person with premeditation. See State v. Celaya, 135 Ariz. 248, 660 P.2d 849 (1983).
In the instant case, as a predicate to invocation of the felony-murder rule, the state showed that appellant had committed burglary in the first degree, A.R.S. § 13-1508, an element of which was that appellant had "enter[ed] or remain[ed] unlawfully in or on a nonresidential structure or in a fenced commercial yard with the intent to commit any theft or felony therein." A.R.S. § 13-1506 (emphasis added). This showing of intent satisfies the mens rea element of first-degree murder. Appellant's conviction for first-degree murder based on felony-murder was neither unjust nor unconstitutional.
We have reviewed the record on remand for fundamental error pursuant to A.R.S. § 13-4035 and have found none. Appellant's conviction is affirmed.
HOLOHAN, C.J., and HAYS, CAMERON and FELDMAN, JJ., concur.
NOTES
[1] The facts can be found in State v. McLoughlin, 133 Ariz. 458, 652 P.2d 531 (1982) and in State v. Nelson, 129 Ariz. 582, 633 P.2d 391 (1981).
[2] Donald Nelson, appellant's co-defendant, was tried prior to appellant. See State v. Nelson, supra.
[3] A.R.S. § 28-692(F) provided in part that "[t]he person [whose blood, urine, breath or other bodily substance is being tested at the direction of the state for its alcohol content] may have a physician or a qualified technician, chemist, registered nurse or other qualified person of his own choosing administer a chemical test or tests in addition to any administered at the direction of a law enforcement officer."
[4] In that interview, Dr. Loftus discussed, in general terms, how a variety of factors, i.e. age, amount of time between viewing an incident and identifying persons involved, or the nature of the incident viewed, might affect a person's ability to render an accurate identification. She said she could not comment on the reliability of any of the witnesses in the case.
[5] A.R.S. § 13-1105(A)(2) provides that a person commits first degree murder if

"2. Acting either alone or with one or more other persons such person commits or attempts to commit sexual conduct with a minor under § 13-1405, sexual assault under § 13-1406, child molestation under § 13-1410, narcotics offenses under § 13-3406, subsection A, paragraph 3, 5, or 6, kidnapping under § 13-1304, burglary under § 13-1506, § 13-1507 or 13-1508, arson of an occupied structure under § 13-1704, robbery under § 13-1902, 13-1903 or 13-1904, escape under § 13-2503 or 13-2504, and in the course of and in furtherance of such offense or immediate flight from such offense, such person or another person causes the death of any person."